```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
   TATIANA SWIDERSKI,                                     :
                                    Plaintiff,            :
                                                          :         14-CV-6307 (JPO)
                    -v-                                   :
                                                          :         OPINION AND ORDER
   URBAN OUTFITTERS, INC.,                                :
                                    Defendant.            :
                                                          :
---------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

     Plaintiff Tatiana Swiderski brings this action against Defendant Urban Outfitters, Inc. ("Urban Outfitters"), alleging causes of action for discrimination and retaliation in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because Swiderski, a citizen of New York State, is suing Urban Outfitters, a Pennsylvania corporation whose principal place of business is in Pennsylvania, for more than $75,000. Urban Outfitters moves to dismiss the Complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. For the reasons that follow, the motion is denied.

**I.**      **Background**[1]

     In September 2013, Swiderski began working as a sales associate for Urban Outfitters in Midtown Manhattan. (¶ 9.) As a sales associate, Swiderski's duties included interacting with customers and "facilitating sales . . . ." (¶ 10.) When she first started working at Urban

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purposes of this motion. (Dkt. No. 1, Complaint.) All record citations are to the Complaint unless specified otherwise.

1

Outfitters, another sales associate, Tony (whose last name is currently unknown to Swiderski[2]), told her that "he could see why [Swiderski] was hired by [Christopher] Morris [her supervisor] because [Swiderski] was 'tall, pretty, thin and white.'"  (¶¶ 12–13.)

About a month and a half later, Brian, a member of Urban Outfitters's security team, told Swiderski and another sales associate that he had caught a "middle-aged Asian man following them around the store and videotaping them as they walked up the stairs, wearing skirts."  (¶ 14.)  Brian did not report this incident to police.  (¶ 15.)  Instead, he took a photo of the man's identification, deleted "any photos from the man's cell phone, and let him leave without further issue."  (*Id.*)  Brian then asked Swiderski "[w]hat are you wearing under your skirt?"  (¶ 16 (emphasis removed).)  Swiderski reported the "sexual harassment the same day to Mr. Morris [who] responded '[i]t's a big city and you're a pretty girl, what did you expect? . . . These things happen.'"  (¶ 17.)  Later the same day, Swiderski reported "the sexual harassment" to two other managers, Anna and Remi.  (¶ 18.)  They told her that there had been "several incidents involving the same male customer who repeatedly came to [Urban Outfitters's] store, sat underneath the stairs, and openly stared up the skirts of female customers and staff . . . ."  (*Id.*)  When Swiderski asked them why no one had called the police, they responded that "the police were only brought in for incidents involving theft."  (*Id.* (emphasis removed).)

A few days later, Swiderski accidentally "bumped into" Mr. Morris.  (¶ 19.)  She apologized.  (*Id.*)  "Mr. Morris looked [Swiderski] up and down, in a slow and sexually suggestive manner, and said, '[y]ou never have to be sorry for bumping into me like that.'"  (*Id.*)

On November 7, 2013, Swiderski, hoping to go to the police, asked Brian for a copy of the identification of the male customer who had allegedly taken photographs up her skirt.  (¶ 20.)

---

[2] This is the case for several of Swiderski's coworkers.  Following Swiderski's convention, the Court will refer to these people by their first names only.

Brian did not give her the information.  (*Id.*)  Instead, he "warned [Swiderski] that she could not go to the police, that his supervisor insisted that the incident be handled internally, and that the best thing for her to do was to 'forget it.'"  (*Id.*)  Two days later, Swiderski again "complained about the sexual harassment she endured," this time to Urban Outfitters's women's department manager, Emily.  The following day, Brian confronted Swiderski, "backing her up against a counter and demanding that she 'stop being a stupid bitch' and warning her 'next time I won't be there to protect you.'"  (¶ 23 (emphasis removed).)  After this, Brian began insisting on performing "pat-downs of [Swiderski] at the end of her shift to avoid 'internal theft.'"  (¶ 26.)  He did not do so for other female employees.  (*Id.*)  Brian performed these pat-downs "in order to sexually and inappropriately touch" Swiderski.  (*Id.*)

In late November, Swiderski was assaulted by another customer at Urban Outfitters.  (¶¶ 27–28.)  As she escorted the man to the men's department, "he attacked her by grabbing her top lip and pulling it very hard with both hands stating that he wanted to 'see her teeth,' and then licked her cheek.  The customer also grabbed [Swiderski's] breasts and attempted to pull down the front of her dress, to expose [Swiderski's] breasts."  (¶ 28)  During the assault, no one from Urban Outfitters assisted Swiderski.  (¶¶ 28–29)  After running to safety, though, Swiderski "reported the attack to a co-worker, who in turn reported it to security."  (¶ 30.)  "While security was able to locate and detain the individual who sexually attacked [Swiderski], they simply escorted him out of the store and took no further action."  (*Id.*)  When Swiderski asked why no one was calling the police, "they"—presumably Urban Outfitters's security staff—responded that "'he's obviously retarded' and 'he's not your problem anymore.'"  (*Id.*)

In December 2013, after many requests, Swiderski finally received the middle-aged Asian man's identification information.  She immediately filed a police report, but the police told her "that since [Urban Outfitters's] security guard had taken matters into his own hands, there

3

wasn't much [they] could do." (¶ 33.)  Shortly after Urban Outfitters learned of her report, "retaliation escalated." (¶ 34.)  Swiderski was "suddenly . . . scheduled to work in the stock room."  When she complained about this, "she was told to stop complaining because '[a]t least now people can't molest you.'" (¶ 35.)  She was also required to work late hours and when she expressed concerns about her safety, Urban Outfitters "threat[ened] to never promote her if she failed to cooperate." (¶ 36.)  On December 17, 2013, Swiderski quit.[3]

## II. Discussion

Urban Outfitters moves to dismiss Swiderski's discrimination and retaliation claims under Rule 12(b)(6) on the ground that she has failed to state a claim on which relief can be granted.

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

---

[3] Swiderski briefly contends that Urban Outfitters "constructively discharged" her. (¶ 39.) Urban Outfitters does not respond to this allegation specifically.  Presumably, this is because it believes that Swiderski's allegations fail to meet the less demanding standard for a hostile work environment and, therefore, fail to meet the standard for constructive discharge.  *See Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014).  Nonetheless, just as in *Pryor*, neither party has addressed the constructive discharge claim in its briefing on the instant motion. Because the parties will have the opportunity to address this issue on summary judgment or otherwise before trial, the Court does not consider it here.

2014) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks and brackets omitted).  At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation mark omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

      B.      **Hostile Work Environment**

Swiderski claims that she has been the victim of sex discrimination, in violation of the NYCHRL and the NYSHRL, because Urban Outfitters allowed—or created—a hostile work environment.  Urban Outfitters contends that it cannot be held liable for the conduct of the two customers, or for the conduct of the employees, and that, considered alone, Mr. Morris's actions are insufficient to give rise to a hostile work environment claim.

To plead a hostile work environment claim against her employer under the NYSHRL, a plaintiff must plead "both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (noting that Title VII hostile-environment claims and NYSHRL hostile-environment claims are analyzed similarly).  A hostile work environment is one in which the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted).  Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.

To impute liability to the employer on the basis of co-worker and customer harassment, a plaintiff must plead that the employer was negligent in failing to prevent abusive conduct from occurring. *E.g.*, *Distasio*, 157 F.3d at 62. "An employer who has notice of a hostile work environment has a duty to take reasonable steps to eliminate it." *Id.* (citing *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)).

If Swiderski can impute the alleged conduct of the two customers and Brian to Urban Outfitters, she has pleaded a hostile work environment. Implicitly conceding as much, Urban Outfitters contests the existence of a hostile work environment only by arguing that if the Court does not consider the customers and Brian, no hostile environment remains. (Dkt. No. 7, Defendant's Memorandum of Law, at 8 ("[O]nce these two sets of allegations are properly removed from consideration, it is clear that the balance of allegations against Plaintiff's supervisor fail to give rise to actionable hostile work environment . . . .") ["Defendant's Memorandum"].)

### 1. Customer Harassment[4]

Urban Outfitters contends that it cannot be held liable for the actions of either customer because (1) it lacked the requisite degree of "control" over the customers' actions because it did not know about their behavior prior to the incidents in question and (2) its response to their actions was appropriate. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). Control, in the context of a retail establishment and an offending customer, is assessed based on the retailer's knowledge of the customer's prior behavior—thus, generally, an employer is not liable for failing to prevent an act of harassment by a first-time customer. *Cf. Katzev v. Retail*

---

[4] Urban Outfitters argues that the NYCHRL might not apply to customer harassment. The Court need not, and does not, address this question at this stage because the NYSHRL standard is more demanding than the NYCHRL standard and Swiderski has successfully pleaded a claim under the NYSHRL.

*Brand Alliance, Inc.*, No. 08 Civ. 11197 (GBD), 2010 WL 2836159, at *4 (S.D.N.Y. July 7, 2010).  When an employer finds out about customer harassment, courts "look to whether [its] response was 'immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility [the employer] has with respect to [the . . .] behavior.'" *Summa*, 708 F.3d at 124 (quoting *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997) (brackets in original)).

With respect to the first customer, Urban Outfitters argues that it lacked "control" over him because he is not alleged "to have visited the store on even one occasion prior to the incidents in question." (Defendant's Memorandum at 11.)  Swiderski alleges, however, that her supervisors told her about "several incidents involving the same male customer who *repeatedly came to [the] store*, sat underneath the stairs, and openly stared up the skirts of female . . . staff." (¶ 18 (emphasis added).)  Taking this well-pleaded factual allegation as true—as the Court must at this stage—Swiderski has pleaded that the first customer was, in fact, known to Urban Outfitters's management as a problem.  From the facts as pleaded in the Complaint, one could conclude that Urban Outfitters failed reasonably to prevent him from being a problem again.

With respect to the second customer, Urban Outfitters makes the same argument.  This time, though, it is a reasonable one.  There is no allegation that the second customer was known to management or had ever visited the store.  But Swiderski alleges that no one "responded" during the assault.  (¶ 28.)  The Complaint is unclear as to whether Swiderski called out for help, whether she was visible to Urban Outfitters's security staff, or whether there was anything additional that security could have done.  This omission is troubling because answers to these questions would likely be important in determining the adequacy of Urban Outfitters's response. Nonetheless, as pleaded in the Complaint, these facts render sufficiently plausible Swiderski's argument that the response was inadequate.  The allegation that someone failed to "respond[]" to

something suggests—at least to the level of plausibility—that the person failed to respond to something about which he had some level of awareness.

As such, Swiderski has pleaded an actionable hostile work environment claim based on customer conduct.

### 2. Coworker Harassment

Swiderski contends that Urban Outfitters is liable for the allegedly harassing conduct of her coworkers. Urban Outfitters contends that it cannot be liable for this conduct because "the operative pleading 'does not allege facts plausibly suggesting that [Urban Outfitters] was aware of discrimination by its employees and failed to take remedial actions.'" (Defendant's Memorandum at 13 (citation omitted).) The standard for imputing coworker actions to employers under the NYSHRL is similar to the standard for imputing third-party actions to employers: "the employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305 (1985). When an employer is on notice of harassing behavior, it has an obligation to take appropriate remedial steps. *See, e.g.*, *Summa*, 708 F.3d at 124.

Essentially, Urban Outfitters argues that Swiderski "does not allege that she ever complained about [Brian's] conduct to anyone in management." (Defendant's Memorandum, at 16.) Again, this is not true. Swiderski pleads that, when Brian asked her what she was wearing under her skirt, she "reported the sexual harassment that same that same day to Mr. Morris [who] responded '[i]t's a big city and you're a pretty girl . . . [t]hese things happen.'" (¶ 17.)[5]

---

[5] To the extent that Swiderski argues that Urban Outfitters did not provide a reasonable avenue for complaint, *see Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996), this argument is essentially moot at this stage. For the purposes of a motion to dismiss, Swiderski has pleaded facts sufficient to show that she *did* report at least some of Brian's harassment.

Similarly, Swiderski pleaded that Brian told her that management had actively discouraged her from calling the police.  (¶ 20.)  And, although Swiderski does not appear to allege that she reported some of the other incidents involving Brian, that fact alone is not dispositive.  Rather, the law holds "only that the fact that a sexual harassment complaint is unreported may be *relevant* in considering whether an employer knew of the alleged conduct."  *Distasio*, 157 F.3d at 63 (emphasis added).  Swiderski has pleaded facts sufficient to give rise to the inference that Urban Outfitters was on notice of Brian's behavior.

### 3. Supervisor Harassment

Finally, Swiderski alleges that her supervisor, Morris, committed sexual harassment against her.  In general, a supervisor's conduct is attributable to the employer.  *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995).  Urban Outfitters does not appear to dispute that Morris was a "supervisor" within the meaning of the NYSHRL.  Therefore, the question is whether Morris's actions can give rise to liability under those laws.

Urban Outfitters contends that, *considered alone*, Morris's comments do not rise above the "petty slights and trivial inconveniences" that, even under NYCHRL's "more lenient" standard, are insufficient to give rise to liability.  (*See* Defendant's Memorandum, at 18 (citing *Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 40–41 (1st Dep't 2009)).)  But the Court need not consider these instances in isolation.  The Court has already held that the conduct of Swiderski's coworkers and customers, as alleged, can be fairly imputed to Urban Outfitters.  And Urban Outfitters does not dispute that if that conduct is considered, then

---

Therefore, her claims survive the motion to dismiss.  If, at a later stage, she seeks to show that Urban Outfitters did not provide a reasonable avenue for complaint with respect to *other* allegations of harassment, nothing in this opinion should be read to preclude her from doing so.  As such, the Court need not, and does not, decide whether Urban Outfitters's sexual harassment policy documents can properly be considered at this stage.

Swiderski's work environment was hostile. Accordingly, the Court need not, and does not, decide at this stage whether Morris's comments standing alone were sufficient to create a hostile work environment. Urban Outfitters's motion to dismiss Swiderski's hostile work environment claim is denied.

### C.      Retaliation

Swiderski also alleges that Urban Outfitters retaliated against her for complaining about sexual harassment in the workplace. Urban Outfitters argues that these allegations must be dismissed because, although Swiderski complained to management and the police, her complaints did not concern an "employment practice" within the meaning of the NYCHRL and the NYSHRL.

To state a claim for retaliation under the NYSHRL, a plaintiff must plead that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004). Under the NYCHRL, the third element is satisfied merely by pleading that the employer did something that would be reasonably likely to deter a person from engaging in protected activity. *E.g.*, *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 70–71 (N.Y. App. Div. 1st Dep't 2009) (internal quotation marks omitted).

Urban Outfitters contests Swiderski's retaliation claim only on the first ground—namely that, because her complaint did not concern an "employment practice," her complaint was not "protected activity." (Defendant's Memorandum, at 20–21.) This argument rests on the assumption that Urban Outfitters cannot be held liable for the conduct of Brian and the customers. Because the Court has rejected that argument above, Urban Outfitters's motion to dismiss the retaliation claim is denied.

### III.   Conclusion

For the foregoing reasons, Urban Outfitters's motion to dismiss is DENIED.

The Clerk of the Court is directed to close the motion at docket number 6.

SO ORDERED.

Dated: June 4, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge