UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------ X

TATIANA SWIDERSKI,

                Plaintiff,

      vs.

URBAN OUTFITTERS, INC.,

           Defendant.

 ------------------------------------------------------------------X

Index No.: 14-CV-6307 (JPO)

---

**MEMORANDUM OF LAW IN SUPPORT OF URBAN OUTFITTERS'S MOTION FOR SUMMARY JUDGMENT**

---

**GORDON & REES, LLP**
ATTORNEYS FOR DEFENDANT
URBAN OUTFITTERS, INC.
ONE BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX:   (212) 269-5505

## PRELIMINARY STATEMENT

Plaintiff, Tatiana Swiderski ("Plaintiff"), worked as a sales associate at Urban Outfitters, Inc. ("Urban Outfitters") for about three or four months in the fall of 2013. While employed there, Plaintiff was the victim of repugnant conduct by two customers in two separate incidents. Plaintiff alleges that these two incidents and conduct associated with them form the basis of the current action. It is indeed truly unfortunate that these incidents occurred. It is, however, also unfortunate that Plaintiff misdirects her indignation and attempts to hold Urban Outfitters responsible for them. Just as Plaintiff did nothing to warrant being targeted by her abusers, Urban Outfitters did nothing to warrant being targeted by Plaintiff. Nonetheless, while the two offending customers are itinerant, unavailable, and likely without deep pockets, Urban Outfitters, in contrast, is stationary and a very successful global retail company. Although the indignation and perceived opportunity for a windfall are understandable, they provide absolutely no basis for this lawsuit.

Plaintiff brings claims for discrimination based on sex, together with sexual harassment, allegedly creating a hostile work environment in violation of both the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"). Additionally, she brings claims for retaliation under both the NYCHRL and NYSHRL. Finally, she brings a claim for constructive discharge. As explained more fully below, not one of Plaintiff's claims can survive this motion for summary judgment.

Her claims for discrimination fail because they are based primarily on her subjective dissatisfaction over the handling of the incidents and her personal feelings of being insulted. Her claim for a hostile work environment fails because the conduct at issue was, if anything, episodic and simply cannot qualify as being sufficiently pervasive to alter the conditions of Plaintiff's employment such that it created an abusive working atmosphere. Her claims for retaliation fail

because, among other reasons, she did not engage in a protected activity and Urban Outfitters took no action that would deter an employee from engaging in such an activity. Her constructive discharge claim fails, not only because her hostile work claim fails, but also because there was nothing objectively intolerable about her working conditions. Because all her claims fail, Urban Outfitters is entitled to summary judgment. Plaintiff's Complaint should therefore be dismissed.

## FACTUAL BACKGROUND

For a full statement of the material facts as to which there is no genuine issue, the Court is respectfully referred to the Urban Outfitters's Local Rule 56.1 Statement of Undisputed Material Facts, dated March 24, 2017 ("Rule 56.1 Statement"). The Rule 56.1 Statement, along with all the terms defined therein, is hereby incorporated into this memorandum of law.

## ARGUMENT

### I.   STANDARD

The purpose of summary judgment is to isolate and terminate claims that are factually unsupported so as to avoid costly and unnecessary trials. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Cohane v. NCAA*, 612 Fed. Appx. 41 (2d Cir. 2015).  Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c)(2).

Although "claims under the NYCHRL are 'more liberally construed than claims under Title VII and the [New York State Human Rights Law], the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment.'" *Williams v. Regus Mgmt. Group, LLC*, 836 F. Supp. 2d 159, 170-71 (S.D.N.Y. 2011).  As a result, discrimination claims brought pursuant to the NYCHRL are analyzed using the same three-step *McDonnell Douglas* burden-shifting framework employed for claims under

Title VII and the NYSHRL, albeit slightly modified at the third stage of the analysis. *See Melman v Montefiore Med. Ctr.*, 98 A.D.3d 107, 112-113 (1st Dep't 2012) ("neither the [Local Civil Rights Restoration Act of 2005] nor the City Council report thereon … sets a new framework for consideration of the sufficiency of proof of claims under the NYCHRL or indicated that the *McDonnell Douglass* framework is to be discarded.").

Here, Urban Outfitters is entitled to summary judgment because the Plaintiff cannot even satisfy her *prima facie* burden of establishing her discrimination and retaliation claims under either the NYCHRL or NYSHRL.

## II.    PLAINTIFF'S CLAIMS OF GENDER DISCRIMINATION FAIL[1]

To succeed under the NYCHRL or NYSHRL, the plaintiff, under the familiar *McDonnell Douglas* framework, has the initial burden of establishing a *prima facie* case of discrimination based on gender.[2] *Melman*, 98 A.D.3d at 113. To meet this burden, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was terminated from employment or suffered another adverse employment action; (4) the discharge or other adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id.*[3]

---

[1] Because Plaintiff cannot meet her *prima facie* burden, her claims for discrimination based on sex fail under both the NYCHRL and NYSHRL. *Williams*, 836 F. Supp. 2d at 170-71; *Melman*, 98 A.D.3d at 112-113. In other words, Plaintiff's claims cannot survive the first step of the analysis within the burden-shifting framework.

[2] Plaintiff's claim of sexual harassment based on a theory of a hostile work environment under the NYCHRL is also analyzed in this section of the brief. *See*, *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009) ("Despite the popular notion that 'sex discrimination' and 'sexual harassment' are two distinct things, it is, of course, the case that the latter is one species of sex- or gender-based discrimination. There is no 'sexual harassment provision' of the law [*i.e.*, of the NYCHRL] to interpret; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender.")

[3] "For [NYCHRL] liability, therefore, the primary issue for a trier of fact in harassment cases, as in other terms and conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her gender. At the summary judgment stage, judgment should normally be denied to a defendant if there exist triable issues of fact as to whether such conduct occurred." *Williams*, 61 AD3d at 78.

In this case, Urban Outfitters is entitled to summary judgment on Plaintiff's claims of gender discrimination because she did not and cannot establish her *prima facie* case. Specifically, Plaintiff did not and cannot establish the third and fourth elements because Urban Outfitters did not take an adverse employment action against her giving rise to an inference of discrimination. An adverse employment action is "a materially adverse change in the terms and conditions of employment." *Caskey v. County of Ontario*, 560 Fed. Appx. 57, 58 (2d Cir. 2014).[4] "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Lawson v. City of New York*, 2013 U.S. Dist. LEXIS 166666, *19 (E.D.N.Y. Nov. 21, 2013)(Internal quotations omitted). "A materially adverse change must affect employment in a way that is both detrimental and substantial." *Id*. at *20 (Internal quotations omitted).

As explained in Urban Outfitters's Rule 56.1 Statement, Plaintiff identified nine reasons for bringing an action against Urban Outfitters. **Rule 56.1 Statement ¶ 24**. Not one of those reasons provides a factual basis to support her claims of discrimination, or any of her claims.

Neither the First Incident nor Second Incident[5] can sustain Plaintiff's claim for discrimination[6] because each of those incidents, albeit extremely offensive and wholly inappropriate, entailed actions taken not by Urban Outfitters or any agent thereof, but by third-party customers. *Id*. **¶¶ 25, 27-30, 81, 83-85**. An employer cannot be held liable for the harassing, or discriminating, conduct of an employee or a third-party customer, absent a showing that the employer permitted the harassment to continue past the point in time where it knew or

---

[4] "Examples of such materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Caskey*, 560 Fed. Appx. at 59 (internal quotations omitted).

[5] The First Incident is the first reason Plaintiff identified as a factual basis for legal claims against Urban Outfitters, whereas the Second Incident is the sixth reason. **Rule 56.1 Statement ¶¶ 26, 82.**

[6] This assumes Plaintiff even intends the First and Second Incidents to support her discrimination claims, and not solely to support her claim of sexual harassment, which is unclear.

should have known such harassment was taking place, yet failed to act. *Summa v. Hofstra Univ.,* 708 F.3d 115, 124 (2d Cir. 2013); *Kudatzky v. Galbreath Co.*, 1997 U.S. Dist. LEXIS 14445, *11 (S.D.N.Y. Sept. 22, 1997)("an employer may also be responsible for the acts of non-employees, with respect to sexual harassment in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate or appropriate corrective action."); *Katzev v. Retail Brand Alliance, Inc.,* 2010 U.S. Dist. LEXIS 68694 (S.D.N.Y. July 7, 2010)("this comment by a customer would not constitute a hostile work environment for Plaintiff as an employee for which Defendant can be held responsible.").[7]

Here, Plaintiff's testimony establishes that, once Urban Outfitters knew of the customers' inappropriate conduct, it took effective remedial action. In the First Incident, McCabe confronted and detained the customer, deleting the offensive material and ejecting him from the store before Plaintiff realized what had even happened. **Rule 56.1 Statement ¶¶ 25, 27-30**. The Second Incident occurred wholly without warning and without any witnesses, and as soon as Plaintiff informed her coworkers, the customer was swiftly ejected from the Store.  ***Id*. ¶¶ 81-86**. Under these circumstances, there is simply no basis to hold Urban Outfitters liable for the conduct of either customer. Effective remedial action is not an adverse employment action. Removing each customer from the Store ended the harassing encounter, prevented its recurrence, or both, thereby satisfying Urban Outfitters's obligations as a matter of law. *Summa.,* 708 F.3d at 124 ("Once Hofstra knew or should have known about the harassing behavior, it had a remedial obligation to address and end the harassment. We find that Hofstra met its obligation.")

---

[7] Although these cases involve harassment, there is no reason, given their rationale, that they do not apply with equal force to a claim of discrimination based on sex, brought under the NYSHRL or otherwise. Indeed, the conduct of both patrons in the First and Second Incidents fits the classification of harassment, under the NYSHRL, more easily than discrimination.

Likewise, Plaintiff's conversation with McCabe after the First Incident does not support her claims of discrimination.[8] The conversation entailed McCabe informing Plaintiff and Becker that a patron had surreptitiously photographed or filmed up their skirts while they were on the stairs. **Rule 56.1 Statement ¶¶ 31, 33-34**. During the conversation, McCabe asked them if they were wearing shorts under their skirts to prevent inappropriate exposure. *Id.* **¶ 34**. Although Plaintiff describes this question as "accusatory" and presumably dislikes that McCabe asked it, nothing about the question in particular or the conversation with McCabe in general constitutes an adverse employment action. The conversation had nothing to do with the terms and conditions of Plaintiff's employment, never mind a change in them. However discourteous Plaintiff views the exchange, not even the liberal NYCHRL is a general civility code. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 110 (2d Cir. 2013) (noting that "district courts must be mindful that the NYCHRL is not a 'general civility code.'").

Plaintiff's belief that the police should have been called after either the First Incident or the Second Incident fares no better as factual support for her claims of discrimination.[9] Plaintiff was "angry" that Morris did not call the police after the First Incident, as she believed calling the police was the "right thing" to do. **Rule 56.1 Statement ¶ 54**. Whether calling the police was the right thing to do in Plaintiff's opinion, or even as dictated by some precept of moral philosophy, is legally irrelevant. Not calling the police is not an adverse employment action because it has nothing to do with terms and conditions of employment. The same reasoning applies even more forcefully to the failure to call the police after the Second Incident. Although Plaintiff reportedly

---

[8] Plaintiff's conversation with McCabe is the second reason she identified as a factual basis purportedly giving rise to a legal claim. **Rule 56.1 Statement ¶ 32.**

[9] The failure to call the police after the First Incident is the third reason Plaintiff identified as a factual basis for legal claims against Urban Outfitters. **Rule 56.1 Statement ¶ 38.** The failure to call the police after the Second Incident is the seventh reason Plaintiff identified as a factual basis for legal claims against Urban Outfitters. **Rule 56.1 Statement ¶ 91.**

mentioned the Second Incident to two managers, she did not report the Second Incident to Urban Outfitters management. **Rule 56.1 Statement ¶ 88**. In fact, Morris and McManus first learned of the Second Incident from a newspaper article about the instant lawsuit. *Id.* **¶ 89**.  In any event, as noted above, Urban Outfitters had no legal obligation to call the police, did not prevent Plaintiff from calling the police herself, and indeed satisfied its remedial obligation by addressing and ending the instances of customer harassment when learning of them.

Moreover, none of the foregoing conduct occurred under circumstances giving rise to an inference of discrimination. The First and Second incidents involved acts by third-party customers, and Plaintiff's conversation with McCabe after the First Incident concerned the details of the incident, how it would be handled prospectively, and what Plaintiff and Becker were wearing at the time. This conduct, taken together, gives rise not to an inference of discrimination but rather an inference of prompt remedial action. *See*, *e.g.*, *Vaughn v. City of New York*, 2010 U.S. Dist. LEXIS 50791, *36, n. 9 (E.D.N.Y. May 24, 2010)("If conclusory statements by plaintiffs are not sufficient to raise an inference of discrimination, then *a fortiori*, conclusory statements by a third party are not."). Moreover, Urban Outfitters had no legal obligation to call the police in connection with the First and Second Incidents, and Plaintiff's reliance on this alleged failure is evidence only that she disagreed with how the situations were handled.  Urban Outfitters had no knowledge of the Second Incident and McCabe, who is not a manager or agent of Urban Outfitters, believed he handled the First Incident properly at the time. When the First Incident was subsequently reported to management, no one prevented her from reporting the incident to police herself, and in fact she was given the contact information she had requested. **Rule 56.1 Statement ¶¶ 50, 55, 56, 59**. Reasonable minds can disagree as to the right course of action in the situation. Indeed, Becker, who was as equally victimized as Plaintiff,

considered the First Incident to be "no big deal." **Rule 56.1 Statement ¶35**. However, a difference of opinion, with nothing more, cannot form the basis of a claim of discrimination. *Scott-Robinson v. City of New York*, 2016 U.S. Dist. LEXIS 177789, *13-14 (S.D.N.Y. Dec. 15, 2016)("plaintiff's subjective belief that she was 'insulted, humiliated, and upset by this obvious discrimination and retaliation,' is insufficient under the NYCHRL's objective standard.")(internal quotation omitted); *Petrisch v. HSBC Bank USA, Inc.*, 2013 U.S. Dist. LEXIS 45346, at *41 (E.D.N.Y. Mar. 28, 2013)(observing that "it is well established that plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination.")(internal quotations omitted); *Paolercio v. Allstate Ins. Co.*, 2011 U.S. Dist. LEXIS 113633, *17-18 (E.D.N.Y. Sept. 30, 2011)("Although supported by [plaintiff's] testimony, these feelings of discrimination do not amount to evidence that the court can credit.").

Although Plaintiff also alleges that the callousness and insensitivity of Morris and the aggressiveness of McCabe support her claims of discrimination, her factual allegations are insufficient as a matter of law.[10] As an initial matter, the alleged callousness and insensitivity of Morris and the alleged aggressiveness of McCabe do not constitute adverse employment actions. They were isolated incidents of little to no consequence that did not involve a change in the terms or conditions of Plaintiff's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(observing that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.")

Neither does the alleged callousness and insensitivity nor the alleged aggressiveness give rise to an inference of discrimination. With respect to Morris, Plaintiff claims that, after she apologized for accidentally bumping into him, he looked her up and down, and then responded

---

[10] The conduct of Morris and McCabe is the eighth reason Plaintiff identified as a factual basis for legal claims against Urban Outfitters. **Rule 56.1 Statement ¶ 101.**

that she never had to be sorry for that. **Rule 56.1 Statement ¶ 104**. Thus, regarding the sequence of events, Plaintiff first accidently bumped into Morris; Morris then allegedly responded with a gender-neutral comment, namely that she "never [had] to be sorry for that." *Id*. There is absolutely no basis to infer that his response, after being bumped into, was motivated by discrimination, based on sex or otherwise.[11] Plaintiff apparently did not like the look on Morris's face or the tone in his voice. That was especially the case because she "had just been upskirted." *Id*. Nonetheless, Plaintiff's opinion, displeasure, or other subjective feelings do not constitute evidence of discrimination. *Scott-Robinson*, 2016 U.S. Dist. LEXIS at *13-14; *Petrisch*, 2013 U.S. Dist. LEXIS at *41; *Paolercio*, 2011 U.S. Dist. LEXIS at *17-18. Additionally, Morris's comments, at most, are irrelevant stray remarks. *Melman v Montefiore Med. Ctr.*, 98 A.D.3d 107, 125 (1st Dep't 2012)(noting that stray remarks "even if made by a decision maker, do not, without more, constitute evidence of discrimination."). Furthermore, even assuming *arguendo* that Morris's response was inappropriate, it at most constitutes a petty slight. *Mihalik*, 715 F.3d at 114. Again, even the liberal NYCHRL is not a general civility code. *Id. at* 110. Accordingly, Morris's response allows no reasonable inference of discrimination.

The same analysis applies to Morris's reportedly callous comment that he made after the First Incident, namely that Plaintiff is a girl in New York City and it is her responsibility to watch out for herself. **Rule 56.1 Statement ¶ 40**. Although Plaintiff was evidently displeased by the remark, it is at most a petty slight and allows no reasonable inference of discrimination because it would be based merely upon her subjective belief of being discriminated against.

---

[11] Regarding the sexual harassment aspect of her discrimination claim under NYCHRL, Plaintiff must provide some basis, other than her own subjective belief or general conclusory allegations, for concluding that the incidents were in fact discriminatory. *Lawson v. City of New York*, No. 10 Civ. 5238 (RJD) (CLP), 2013 U.S. Dist. LEXIS 166666, at *40-41 (E.D.N.Y. Nov. 21, 2013) ("Although the [NYCHRL] does not impose a 'severe or pervasive' bar, plaintiff must still link the adverse employment action to a discriminatory motivation, and where plaintiff fails to do so, her claim fails").

*Mihalik*, 715 F.3d at 114; *Scott-Robinson*, 2016 U.S. Dist. LEXIS at *13-14; *Petrisch*, 2013 U.S. Dist. LEXIS at *41.

McCabe's conduct following the First Incident likewise does not support Plaintiff's claims. McCabe allegedly showed Plaintiff his bandaged hand, which was injured in a bar fight, as evidence that he generally tries to do the right thing. **Rule 56.1 Statement ¶ 44**. McCabe also reportedly approached Plaintiff, until her back was against the wall of a cash register, telling her to drop the First Incident as an issue because she "had stirred up a bit of questioning" about it. *Id*. **¶ 45**. In this context, McCabe allegedly called Plaintiff "a stupid bitch." *Id*. **¶ 46**. According to Plaintiff, McCabe was concerned because he had been told that he did not handle the First Incident properly. *Id*. **¶ 43, 45, 46**. Based on Plaintiff's own testimony then, McCabe's alleged aggression was not motivated by Plaintiff's sex but instead by his concern that he would get in trouble for allegedly handling the First Incident improperly. *Id*

Therefore, because McCabe's alleged reference to Plaintiff as a "stupid bitch" was said in the context of concern over his job performance, it does not imply hostility based on Plaintiff's sex. *Holleman v. Art Crating Inc*, 2014 U.S. Dist. LEXIS 139916, *114-115 (E.D.N.Y. Sept. 30, 2014)(noting that "the Second Circuit stated that there was no categorical rule that the word 'bitch' constitutes evidence of sex discrimination," *citing Pucino v. Verizon Communs., Inc.*, 618 F.3d 112 (2d Cir. 2010)); *Pucino*, 618 F.3d at 118 ("we cannot say that use of the word 'bitch' always and in every context" "reflects" "hostility toward women" "or that its usage need not be viewed in context," *citing Yuknis v. First Student, Inc.*, 481 F.3d 552, 555 (7th Cir. 2007)("a gender-specific term of abuse, such as 'son of a bitch,' need not imply hostility based on the abused person's sex, any more than saying '*she* is a bad worker' need imply hostility based on her sex.")(Internal citation omitted)). Thus, McCabe's alleged aggressiveness, and any

commentary in connection therewith, does not, given its context, support an inference of discrimination.

Furthermore, even assuming *arguendo* that McCabe's conduct gives rise to an inference of discrimination, his behavior cannot be imputed to Urban Outfitters. "Courts have applied a stricter standard under the state [NYSHRL] and local [NYCHRL] human rights laws with regard to the imputation of liability to an employer, requiring that the employer encourage, condone, or approve of the conduct." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, LLC, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007).[12] Here, Urban Outfitters neither encouraged, condoned, nor approved of McCabe's conduct toward Plaintiff. **Rule 56.1 Statement ¶¶ 47, 102-103.**

By the same reasoning, McCabe's alleged invasive pat-downs of Plaintiff on four occasions cannot be imputed to Urban Outfitters.[13] Urban Outfitters had a universal policy requiring employees to undergo a standardized screening procedure when leaving the Store for purposes of deterring and preventing theft of merchandise. *Id.* **¶¶ 60, 62**. No one from Urban Outfitters ever saw McCabe touch Plaintiff or otherwise act inappropriately when performing the screening procedure. *Id.* **¶ 62**. In fact, McManus testified that she never saw McCabe or anyone else physically touch Plaintiff during these routine screening procedures. *Id.*

Based on the foregoing, Plaintiff did not and cannot establish a *prima facie* case of discrimination based on gender. There is no evidence in this case that Plaintiff was treated "less well" or unfavorably in the terms and conditions of her employment *because* of her sex.

---

[12] Thus, an "employer may be liable for discriminatory behavior by an employee only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action;" or "(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." *Erasmus v. Deutsche Bank Ams. Holding Corp.*, 2015 U.S. Dist. LEXIS 160351, *21-22 (S.D.N.Y. Nov. 30, 2015)

[13] The pat-downs by McCabe are the ninth reason Plaintiff sued Urban Outfitters. **Rule 56.1 Statement ¶ 63.**

*Williams*, 61 AD3d at 78. Accordingly, her claims for discrimination under the NYCHRL and the NYSHRL fail and should be dismissed.

### III.    PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT FAILS

To establish a claim for a hostile work environment under the NYSHRL,[14] "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)(Internal quotations omitted).

Here, as shown above, Plaintiff cannot establish a claim of discrimination under the liberal NYCHRL. *A fortiori*, she cannot establish a hostile work environment claim under the NYSHRL. She failed to produce any evidence showing that the environment at the Store was permeated with discriminatory intimidation, ridicule, or insult of a sufficiently severe or pervasive nature. The First and Second Incidents were just that: two separate incidents, which were not continuous or concerted, but rather episodic. The Store was thus not permeated with discriminatory intimidation that was sufficiently pervasive. Even if Plaintiff deems these isolated incidents involving third-party customers to be extremely serious, Urban Outfitters, as established above, met its remedial obligations with respect to them as a matter of law. *Summa.*, 708 F.3d at 124.

---

[14] Claims of sexual harassment can be advanced under two theories: (1) hostile work environment, and (2) *quid pro quo* harassment. *See Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir. 1997). Plaintiff is proceeding under the former. Additionally, claims of hostile work environment brought under the NYSHRL require the same standard of proof as those under Title VII of the 1964 Civil Rights Act. *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 n. 14 (S.D.N.Y. 2013).

Neither can the alleged callousness and insensitivity of Morris nor the alleged aggressiveness of McCabe support Plaintiff's claim for a hostile work environment. As outlined above, and as indicated in the Rule 56.1 Statement, the actions of Morris and McCabe were not continuous or concerted, but rather episodic. **Rule 56.1 Statement ¶¶ 40, 43-46, 104**. Neither the two comments made by Morris nor McCabe's insult and aggressive whispering amounted to discriminatory changes in the terms and conditions of Plaintiff's employment. The standard is "sufficiently demanding" such that the NYSHRL is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(observing that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" and the standard, when "[p]roperly applied, will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.")(Internal citations and quotations omitted). Additionally, as established above, there is no link between Plaintiff's sex and the alleged conduct of Morris and McCabe. *Stoner v. N.Y. City Ballet Co.*, 2002 U.S. Dist. LEXIS 5921, *64-65 (S.D.N.Y. Apr. 8, 2002)("In order for Title VII [and likewise the NYSHRL] to be employed to combat a hostile work environment, a causal connection must exist between the gender of the plaintiff and the resultant disparity in treatment in the workplace.")

Accordingly, Plaintiff's claim of a hostile work environment under the NYSHRL fails as a matter of law. It should therefore be dismissed.

## IV.   PLAINTIFF'S CLAIMS FOR RETALIATION FAIL[15]

"To establish a *prima facie* case of retaliation under the NYCHRL, a plaintiff must show that: (1) he participated in a protected activity; (2) the defendant knew about his participation; (3) the defendant took an employment action that disadvantaged the plaintiff *in any manner*;[16] and (4) a causal connection existed between the protected activity and the negative employment action." *Fattoruso v. Hilton Grand Vacations Co.*, 525 Fed. Appx. 26, 27 (2d Cir. 2013).[17] Once the plaintiff meets this initial burden, the burden then shifts to the defendant to present "a legitimate, non-retaliatory rationale" to support its employment decision. *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 383 (S.D.N.Y. 2013). Once the defendant meets this burden, the plaintiff has the obligation to show that the reasons put forth by the defendant were merely a pretext. *Id*. at 383-384.

"[C]omplaining of conduct other than unlawful discrimination is not a protected activity subject to a retaliation claim under the State and City Human Rights Laws." *Pezhman v City of New York*, 47 AD3d 493, 494 (1st Dep't 2008); *see also*, *Mi-Kyung Cho v. Young Bin Café,* 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013)("Protected activity within the meaning of the NYSHRL and NYCHRL is conduct that "oppos[es] or complain[s] about unlawful discrimination.").

Here, Plaintiff cannot satisfy any elements of a retaliation claim. The first fatal flaw in her claims is that she never engaged in a protected activity, which precludes her from satisfying

---

[15] Alleged retaliatory conduct is the fourth reason Plaintiff commenced this action. **Rule 56.1 Statement ¶ 67.**

[16] Courts also describe the third element as requiring the plaintiff to show that "her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity." *Mi-Kyung Cho*, 42 F. Supp. 3d at 506. Another court recently described the third element as follows: "[U]nder the NYCHRL, adverse action is any action that would be reasonably likely to deter a person from engaging in a protected activity." *Scott-Robinson v. City of New York*, 2016 U.S. Dist. LEXIS 177789, *11 (S.D.N.Y. Dec. 15, 2016).

[17] "Retaliation claims brought pursuant to the NYSHRL and the NYCHRL are also analyzed under the McDonnell Douglas burden-shifting framework." *Workneh v. Super Shuttle Int'l, Inc.*, 2016 U.S. Dist. LEXIS 136906, *18 (S.D.N.Y. Sept. 30, 2016). Because the state counterpart to the NYCHRL is "viewed as a floor below which the [NYCHRL] cannot fall," *Williams*, 61 A.D.3d at 66-67, if Plaintiff's claim fails as a matter of law under the more liberal NYCHRL, her claim also fails under the NYSHRL.

any of the elements. Additionally, her retaliation claims fail for the independent reason that Urban Outfitters did not engage in any conduct that would deter Plaintiff or anyone from engaging in any protected activity.

Plaintiff never complained of unlawful discrimination. Rather, she complained about how Urban Outfitters handled the First Incident and about Morris and McCabe. **Rule 56.1 Statement ¶¶ 47, 54, 68, 72, 73, 102**. With respect to how Urban Outfitters handled the First Incident, Plaintiff complained that the police were not called. *Id.* ¶ 54. Nonetheless, a failure to call the police is not an act of unlawful discrimination. Plaintiff thus complained not about an act of unlawful discrimination, but about Urban Outfitters's response to the conduct of the patron perpetrating the First Incident. Although Plaintiff did not complain to management about a failure to call the police in connection with the Second Incident, even if she had complained it would be irrelevant for purposes of her retaliation claim. Whatever legal language, or words of moral condemnation, that could be used to describe the conduct of the patrons who perpetrated the First and Second Incidents, they did not engage in unlawful *employment* discrimination. *Mihalik*, 715 F.3d at 112 ("to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her *employer's* discrimination.")(emphasis added); *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 367 (S.D.N.Y. 2016)("An employee engages in a protected activity when he complains of an *employment* practice that he reasonably believes violates the law.")(emphasis added); *see also*, *Elmessaoudi v. Mark 2 Rest. LLC*, 2016 U.S. Dist. LEXIS 125927, *30 n.9 (S.D.N.Y. Sept. 15, 2016)("The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination."). Accordingly, Plaintiff's complaints that Urban Outfitters did not call the police, whether in response to the

First or Second Incident, do not constitute a protected activity that gives rise to a claim for retaliation.

Plaintiff also complained about the behavior of Morris and McCabe. Nonetheless, as explained above, neither Morris nor McCabe engaged in unlawful discrimination. Morris was allegedly callous and insensitive, but his ostensible callousness and insensitivity had nothing to do with discrimination against Plaintiff on the basis of her sex. Likewise, McCabe was allegedly aggressive toward Plaintiff. Nevertheless, the motivation for his reported aggressiveness was not Plaintiff's sex, but as reported by Plaintiff, it was that his handling of the First Incident would result in his discipline. **Rule 56.1 Statement ¶¶ 43-46**. Thus, when Plaintiff complained about Morris and McCabe she was not complaining about unlawful discrimination or discriminatory behavior, but about callous, insensitive, and aggressive behavior. Accordingly, Plaintiff did not engage in any protected activity. Her claim for retaliation therefore fails. Analysis of her retaliation claim could and should end here.

Even if the analysis proceeded, however, the remaining aspects of Plaintiff's claim fare no better. If Plaintiff did not participate in any protected activity, Urban Outfitters could obviously not be aware of it. Because she did not so participate, Plaintiff cannot satisfy the second element of retaliation.

Neither can she satisfy the third element, because Urban Outfitters did nothing that qualifies as disadvantaging Plaintiff or as reasonably likely deterring her, or anyone else, from engaging in a protected activity. Plaintiff alleges that, in retaliation for complaining about the handling of the First Incident, unidentified individuals were no longer nice to her and did not give her positive feedback; that her routine questions to the floor manager, such as asking someone to cover her zone or asking to use the restroom, were ignored; that she was denied

breaks at least twice; and that she was assigned tasks for which she had no formal training, included working at the register, in the back stock room, and in the women's accessories department. **Rule 56.1 Statement ¶¶ 68, 72, 73**. Plaintiff also alleges that, after the Second Incident, she was retaliated against because she was asked to work a night shift one day a week. *Id*. ¶ 92 .

That some unidentified individuals may not have been nice to Plaintiff and might have failed to give her positive feedback is of no legal consequence. Such conduct constitutes, if anything, mere petty slights, minor annoyances, or an absence of good manners. *Dauer v. Verizon Commc'ns Inc.*, 613 F. Supp. 2d 446, 465 (S.D.N.Y. 2009), vacated on other grounds, 618 F.3d 112, quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (U.S. 2006) for the proposition that "[P]etty slights, minor annoyances, and simple lack of good manners will not normally constitute adverse employment actions for purposes of a retaliation claim." (internal quotation omitted). The same reasoning applies to Plaintiff's questions being ignored. That someone ignored her questions about using the restroom and covering her work zone is, at most, a petty slight, minor annoyance, or an absence of good manners.

Additionally, although Plaintiff claimed that she was twice denied breaks, she clarified that she was actually denied a break only once, because on one occasion she took her break about 15 minutes before the end of her shift. **Rule 56.1 Statement ¶ 72**. Plaintiff thus merely identified two instances of inconvenience concerning a break while working in retail, which simply does not suffice to establish a claim for retaliation. *Dudley v. New York City Hous. Auth.*, 2014 U.S. Dist. LEXIS 140052, *73-74 (S.D.N.Y. Sept. 30, 2014), citing *Williams*, 61 A.D.3d at 80, for the proposition that "[S]ummary judgment will still be available [on a NYCHRL retaliation claim] where [employers] can prove that the alleged discriminatory conduct in question does not

represent a 'borderline' situation but one that could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." Indeed, *Herschman v. City Univ. of N.Y.*, 2011 U.S. Dist. LEXIS 32854 (S.D.N.Y. Feb. 28, 2011), involved an "instance of alleged retaliation" consisting of an "approximately two-month long denial of [the plaintiff's] "daily fifteen-minute break." *Herschman*, 2011 U.S. Dist. LEXIS at *49.[18] There, the court noted that "[R]easonable fact-finders perhaps could disagree as to whether being deprived of a break every workday for a period of approximately two months amounts to an adverse employment action." *Id.* at *50.[19] If being deprived of a break every workday for approximately two months might not support a claim for retaliation, being inconvenienced regarding a break only twice surely cannot support such a claim. No reasonable fact-finder could disagree. *See also*, *Scott-Robinson*, 2016 U.S. Dist. LEXIS at *14, characterizing *Dudley v. N.Y. City Hous. Auth.*, 2014 U.S. Dist. LEXIS 140052 (S.D.N.Y. Sept. 30, 2014), as "finding that [an] hour and fifteen minute change in plaintiff's work schedule was nothing more than an inconvenience, and such trivial matters do not constitute retaliatory actions even under the NYCHRL's liberal standard." (internal quotations omitted).

Moreover, the assignment of tasks for which Plaintiff had no formal training does not, as a matter of law, constitute retaliatory conduct. *See*, *Baldwin v. Goddard Riverside Cmty. Ctr.*, 615 Fed. Appx. 704, 705 (2d Cir. 2015)(affirming grant of summary judgment on retaliation claim under NYCHRL, *inter alia*, and noting that "none of the minor frictions or changes to her job duties that she cites constitute adverse employment actions, either singly or taken together."); *Schwartz v. New York State Ins. Fund*, 2012 U.S. Dist. LEXIS 165288, 20-21 (S.D.N.Y. Aug. 28, 2012)("alleged retaliatory behavior must be more disruptive than a mere inconvenience or an

---

[18] *Herschman* involved claims for relief under Title VII, as well as under the NYSHRL and the NYCHRL. *Herschman*, 2011 U.S. Dist. LEXIS at *1.
[19] In *Herschman*, the court did not decide this issue.

alteration of job responsibilities.")(internal quotations omitted); *Santiago v. City of New York*, 2009 U.S. Dist. LEXIS 30371, *42 (E.D.N.Y. Mar. 31, 2009)(finding that, in connection with claims of "retaliation under the New York State and New York City Human Rights Law," "plaintiff's other claims, such as [a] failure to train…, are similarly inconsequential.").

Additionally, Urban Outfitters asking Plaintiff to work the night shift one day a week is not retaliatory conduct as a matter of law. *Dudley*, 2014 U.S. Dist. LEXIS at *74-75 (ruling that the "change in [plaintiff's] work schedule, therefore, was nothing more than an inconvenience, and such trivial matters do not constitute retaliatory actions even under the NYCHRL's liberal standard."); *see also*, *Petyan v. N.Y. City Law Dep't*, 2015 U.S. Dist. LEXIS 53380, *38 (S.D.N.Y. Apr. 23, 2015)("Courts in this Circuit regularly find that schedule changes and close monitoring do not constitute adverse employment actions in the retaliation context."); *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 523 (S.D.N.Y. 2008)("Were [plaintiff's] retaliation claim predicated solely on his change of schedule, he would face a difficult, if not Sisyphean, task," citing *Constance v. Pepsi Bottling Co.*, 2007 U.S. Dist. LEXIS 62599 (E.D.N.Y. Aug. 24, 2007) for the proposition that "[P]laintiff's complaints that he was required to travel and had irregular shifts requiring him to work at night and on occasional weekends amounts to 'mere inconveniences' rather than adverse actions."); *Korzeniewski v. New York*, 2013 U.S. Dist. LEXIS 167519, *19-20, 22 (W.D.N.Y. Nov. 22, 2013)(dismissing claim where plaintiff alleged "no extenuating circumstances" related to schedule change); *Taylor v. N.Y.C. Dep't of Educ.*, 2012 U.S. Dist. LEXIS 170917, *31 (E.D.N.Y. Nov. 30, 2012)("The courts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions, even in the context of a retaliation claim, where the action results merely in an

inconvenience, such as an increased commute or unfavorable hours.")(internal quotations omitted).

In sum, the alleged retaliatory conduct in this case qualifies as nothing more than petty slights or trivial inconveniences. Thus, none of the actions identified by Plaintiff would dissuade a worker from making or supporting a charge of discrimination. Plaintiff therefore did not and cannot satisfy the third element of a retaliation claim.

Finally, because Plaintiff participated in no protected activity and because Urban Outfitters took no action that would reasonably likely deter a person from engaging in a protected activity, Plaintiff cannot establish a causal connection between any purported protected activity and any allegedly negative employment action. She thus did not and cannot satisfy the fourth element of her claim for retaliation. *Scott-Robinson*, 2016 U.S. Dist. LEXIS at *14 ("Because plaintiff fails to adequately allege that she suffered an adverse action, we do not consider whether, [sic] she has alleged a causal connection between the protected activity and the adverse action. We therefore grant defendants' motion to dismiss plaintiff's NYCHRL retaliation claims.")

Accordingly, Plaintiff's claims of retaliation fail as a matter of law and should be dismissed.

## V.  PLAINTIFF'S CLAIM FOR CONSTRUCTIVE DISCHARGE FAILS[20]

"In the Second Circuit, an employee is constructively discharged when her employer intentionally creates a work atmosphere so intolerable that [she] is forced to resign involuntarily." *Baptiste v. Cushman & Wakefield*, 2007 U.S. Dist. LEXIS 19784, *33-34 (S.D.N.Y. Mar. 7, 2007). Whether "the employee's work conditions [are] so intolerable as to

---

[20] The alleged constructive discharge is the fifth reason Plaintiff sued Urban Outfitters.

compel resignation … is assessed objectively by reference to a reasonable person in the employee's position." *Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004). When a plaintiff's claim for a hostile work environment fails, her claim for constructive discharge based thereon also fails. *Nakis v. Potter*, 422 F. Supp. 2d 398, 412 (S.D.N.Y. 2006)("without an actionable hostile environment claim, a plaintiff's constructive discharge claim must also fail.")(Internal brackets omitted).

Here, Plaintiff's claim for constructive discharge fails because, as established above, she does not have an actionable claim for a hostile work environment. Her constructive discharge claim should be dismissed on this basis alone.

Even if that fatal flaw were ignored, not a scintilla of evidence even suggests that Urban Outfitters intentionally created an intolerable work atmosphere. **Rule 56.1 Statement, generally**. Moreover, Plaintiff's reasons for quitting, to the extent they are coherent, fail to satisfy the reasonable-person standard. According to Plaintiff, she quit her job at Urban Outfitters because she thought her experience at the Store would worsen, because new things happened, and because she felt powerless. **Rule 56.1 Statement ¶ 77, 79.** Additionally, she quit because she did not want to risk leaving the Store and then be out in public during the early morning. ***Id.*** ¶ 78 . She also quit working at the Store because she was uninformed of company policies, believed the police would never be called regardless of what happened to her, and she felt not only that her rights were gone but that she did not know her rights. **Rule 56.1 Statement ¶** 80. In other words, Plaintiff quit not because of any objectively intolerable conditions, but due to her subjective assessment of the future, her negative feelings, her ignorance, and her general dissatisfaction. Her constructive discharge claim therefore also fails on this independent basis. *Pugni v. Reader's Digest Ass'n*, 2007 U.S. Dist. LEXIS 26284, *73 (S.D.N.Y. Apr. 5, 2007)(observing that the

"Second Circuit has stated that the mere dissatisfaction with work assignments, unfair criticism, or working conditions that can be categorized as unpleasant, do not constitute a constructive discharge" and further noting that "the work conditions must be objectively intolerable; the employee's subjective perceptions are not determinative."); *Nobler v. Beth Israel Medical Center*, 702 F. Supp. 1023, 1030 (S.D.N.Y. 1988)(employee's subjective feeling that his situation is intolerable insufficient to show constructive discharge). Accordingly, Plaintiff's claim of constructive discharge should be dismissed.

## CONCLUSION

In light of the foregoing, Urban Outfitters respectfully requests that its motion for summary judgment be granted in its entirety and that Plaintiff's complaint be dismissed, and that the Court grant such other and further relief it deems just and proper.


Dated: March 24, 2017
       New York, New York

                                        Respectfully Submitted,

                                        GORDON & REES, LLP


                                        By:  *Ryan Sestack*
                                             Ryan Sestack